## Eagle Foods, Inc. v. Zoning Hearing Board

*Peter Nelson Harrison,* for appellant,
*Charles S. Wilson,* contra.

BECKERT, J., January 2, 1975.—This is an appeal from the November 6, 1973, decision by the Zoning Hearing Board of New Britain Borough denying appellant's request for a special exception to allow loading of trucks and accompanying loading dock work on appellant's premises between the hours of 7 p.m. and 9 p.m. on usual working days.

Appellant's premises is situated on an R-1 residential district in New Britain Borough and abuts residential properties on two sides. Under a nonconforming use, dating back to June 3, 1969, when the applicable zoning ordinance was enacted, appellant and its predecessors in interest have utilized the property for business purposes. Prior to January 24, 1969, a lumber mill, coal business and bulk fuel oil plant were conducted there. On that date, the property was sold to Brinker's Fuels, Inc., by whom it was used for an office, weighing station and storage and sale of bulk fuel, lumber, building materials and coal.

On November 24, 1969, Brinker's made application for a special exception to permit use of the premises as a motor freight transfer station. A special exception was granted, subject to certain conditions, including the following which are relevant to the present proceeding:

1. No trucks were allowed to operate there except between the hours of 7:45 a.m. and 6 p.m.;

2. No loading, unloading or "warehousing" operations were allowed except between the hours of 7:45 a.m. and 6 p.m.; and

3. No business could be conducted on, or trucks allowed to enter or leave, the premises on Saturdays, Sundays or holidays.

On December 2, 1972, Rutherford Motor Freight (lessee under an agreement with Brinker's, and the appellant herein) applied to and was granted by the New Britain Borough Zoning Hearing Board a modification of that board's 1969 order, so as to allow business operations to be conducted on the premises between the hours of 7 a.m. and 7 p.m.

In its application giving rise to the within appeal, appellant requested that the time allowed for trucking operations be reduced, so as to include only the hours between 7:30 a.m. and 6 p.m., and that loading operations be permitted between 7 and 9 p.m.

The application to the zoning hearing board was for a modification of the earlier special exception allowing the trucking business to be conducted on appellant's premises. The basis cited for the application, and relied upon by the board in denying the relief requested, was section 805 of the New Britain Borough Zoning Ordinance, which deals with nonconforming uses and provides, in relevant part:

"Section 805. *Changes*

". . . (c) The applicant shall show that the proposed change will be less objectionable in external effects than the existing nonconforming use with respect to:

"(1) Traffic generation and congestion including truck, passenger car and pedestrian traffic.

"(2) Noise, smoke, dust, fumes, vapors, gases, heat, odor, glare or vibration.

"(3) Storage and waste disposal.

"(4) Appearance."

Elsewhere in the same section it is provided that any such change in a nonconforming use is permit-

ted only by a special exception, in accordance with article X of the ordinance, so appellant's application was apparently procedurally proper.

The board, in part, based its decision upon appellant's failure to prove that it would suffer hardship if its request were denied. We do not feel that such a conclusion has any relevancy in this proceeding, because hardship is not among the criteria hereinbefore mentioned under section 805 of the ordinance, and this is not an application for a variance.

We are, therefore, left with the board's findings of fact and conclusions of law concerning the levels of noise generated by appellant's trucking and loading operations, inasmuch as the decision of the board did not make reference to any of the other "external effects" under section 805(c). The only significant finding of fact of the board is the following:

"10. A number of neighbors objected to any increase in the hours of operation. The neighbors cited noise as their chief complaint and said that they would be particularly disturbed by having people work at the subject premises until 9:00 p.m. in the evening. They testified that this activity would disturb the peaceful enjoyment of their residential properties."

While it is true that a number of neighbors appeared at the hearing and objected generally to any increase in appellant's loading operations, none among them specifically mentioned excessive noise (or any other of the section 805(c) "external effects") as the basis for their objection. The most specific objections were registered by Mrs. Thomas Smith and Mrs. Wilma Quinlan, who said they would be annoyed by having to look at men working on the loading dock at night, from the hours of 7 to 9 p.m.

Also disregarding, for reasons previously men-

tioned, the zoning hearing board's conclusions of law concerning hardship incurred by appellant, we are left with only this conclusion:

"5. The Board believes that to grant any further modification of the hours of operation might impair the appropriate use of adjacent property and be detrimental to the public welfare."

While this conclusion certainly lacks specificity, we feel that it can reasonably be viewed as a determination by the board that the criteria of section 805(c) have not been met. What remains is to examine whether the record supports their conclusion.

Appellant, as the applicant below, had the burden, under the New Britain Borough Zoning Ordinance, of proving that the requested changes met the test imposed by section 805(c). The standards of proof required thereunder seem clear and such a shift in the burden (which would rest upon the municipality, were the ordinance silent on the question) was, therefore, allowable: Derr Flooring Company, Inc. v. Whitemarsh Township Zoning Board of Adjustment, 4 Pa. Commonwealth Ct. 341 (1971); Township of Abington v. Rocks Associates, Inc., 11 Pa. Commonwealth Ct. 95 (1973).

To satisfy its burden, appellant relied, in large part, upon documentary evidence of the results of sound tests performed on the subject premises during normal working hours on October 5, 1973, by an expert in "communication disorders and industrial hearing conservation." Unfortunately, that expert's letter, allowed by the board as an exhibit and now part of the record before us, is inconclusive on the question of whether noise levels would be reduced over-all if the changes requested by appellant were allowed. Without the benefit of expert verbal testimony to amplify and clarify the contents of the letter,

the document, standing alone, leads us to no meaningful conclusion. However, Paul J. Keating, appellant's president, testified that if trucking operations were decreased and loading operations increased, as proposed, the net result would be a decrease over the course of each working day in the over-all emission of sound. He explained:

"Well, it probably would decrease the sound of running trucks if we decreased the . . . truck operation by that much time.

"And it would merely move the loading operations from the morning until the evening; it wouldn't increase it any. It wouldn't increase the volume of the noise."

We believe appellant's uncontradicted evidence was sufficient to meet its initial burden of proof under section 805(c), thereby making out a prima facie case: Derr Flooring Company, Inc. v. Whitemarsh Township Zoning Board of Adjustment, supra. Had protestants raised specific issues going to the health, safety and general welfare, then appellant would have been required to carry further the burden of proof and to meet and overcome those objections: Id.

Here, the protestants did not go far enough to shift the burden back to the appellant. In reaching this conclusion, we have not considered any of that testimony in the nature of general objection to the very existence of the trucking operation in the particular neighborhood where it is located. While we are sympathetic with those persons who at the hearing voiced their dissatisfaction, and while we certainly recognize the multitude of problems inherent in permitting such a business in close proximity to people's homes, nonetheless, we cannot now relitigate questions which were laid to rest at earlier hearings which

resulted in conditional allowance of appellant's motor freight business. What appellant has proposed here includes a *decrease* in the hours during which trucks may be operated, which evidently would minimize that aspect of the business which seems to have been protestants' foremost concern.

Within the limiting framework of the board's formal findings and conclusions, we have no choice other than to conclude that their decision is not supported by the factual record, and it, accordingly, constituted an abuse of discretion and must be reversed: Zoning Hearing Board v. Konyk, 5 Pa. Commonwealth Ct. 466 (1972).

## ORDER

And now, January 2, 1975, the within appeal is sustained, the decision of the New Britain Borough Zoning Hearing Board is reversed and the board is directed to grant appellant's application.